# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

MSC MEDITERRANEAN SHIPPING
COMPANY, S.A.,

    Plaintiff,

v.                                          Case No. 2:20-cv-2684-MSN-tmp

METRO AIR SERVICES, INC.,

    Defendant.

## ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT METRO AIR SERVICES, INC.

Before the Court is Plaintiff's Second Motion for Default Judgment Against Defendant Metro Air Services, Inc. (ECF No. 60, "Second Motion"), Memorandum of Law in Support of Plaintiff's Second Motion for Default Judgment Against Defendant Metro Air Services, Inc. (ECF No. 61), the Declaration of Pamela Bagley Webb, Esq. in Support of Plaintiff's Second Motion for Entry of Default Judgment against Defendant Metro Air Services, Inc. (ECF No. 62), and Plaintiff's Response to the Court's Order Dated June 30, 2023 (ECF No. 64, "Supplement"). As set forth below, Plaintiff's Second Motion is **GRANTED**. Default Judgment shall be entered against Defendant Metro in favor of Plaintiff in the total amount of $60,295.36, plus post-judgment interest in accordance with 28 U.S.C. § 1961.

## BACKGROUND

As set forth in the Complaint, this matter involves "a maritime claim for breach of contract pursuant to an ocean contract of carriage, as well as equitable indemnification and contribution, related to the land and ocean carriage of cargo, which comprises an admiralty and maritime claim

pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1)." (ECF No. 1 at PageID 3.)

In September 2017, Plaintiff was engaged to carry a cargo of 860 24" flat wide LCD monitors ("Cargo") loaded in container number MSCU4297594 ("Container") from Xiamen, China to Memphis, Tennessee via the Port in Long Beach, California. (ECF No. 1 at PageID 5.) The Container arrived in the Port in Long Beach, California on October 3, 2017, and was placed into the custody of Defendant BNSF Railway Company[1] ('Defendant BNSF") for transport from the Port of Long Beach, California, to Memphis, Tennessee. (*Id.*) On October 16, 2017, the Container arrived in Memphis, at which point Defendant Intermodal Cartage Co., LLC ("Defendant Intermodal") took possession of the Container and delivered it to Defendant Metro Air Services, Inc. ("Defendant Metro") at the Foreign Trade Zone ("FTZ") in Nashville, Tennessee. (*Id.*) Plaintiff alleges that, when the Cargo left its possession, the Container still had the original seal, and the weight of the Container matched the manifested details. (*Id.*) At some point after the Container and the Cargo were placed in the possession of Defendants BNSF, Intermodal, and Metro, the seal was changed and 593 units of Cargo were stolen from the Container. (*Id.*)

On October 16, 2018, the owner of the stolen Cargo, Danmar Lines, Ltd. ("Danmar"), filed a complaint against Plaintiff for the stolen Cargo in the District Court for the Southern District of New York, styled as *Danmar Lines Ltd. v. MSC Mediterranean Shipping Company S.A. et al.*, Case No. 1:18-cv-09462 (the "Underlying Litigation"). (*Id.*) On October 18, 2019, Plaintiff paid

---

[1] Defendant BNSF was dismissed from this matter after an informal exchange of documents and photographs. After this exchange, Plaintiff sought dismissal of Defendant BNSF because it had "no reason to believe that the Cargo was stolen while it was in BNSF's possession or that BNSF caused or contributed to the theft of the Cargo." (*See* ECF No. 25 at PageID 76.)

Danmar $75,000 in full and final settlement of Danmar's claim against it in the Underlying Litigation. (*Id.* at PageID 6.) Plaintiff, however, "maintains that the theft of the Cargo was as a result of action or inactions of the Defendants." (*Id.*)

Plaintiff brought two causes of action against Defendants: Equitable Indemnification and Contribution. Plaintiff seeks recovery for "all costs, fees, expenses, liability and damages [Plaintiff] paid Danmar (comprised of $75,000), and all costs and legal fees that [Plaintiff] incurs or has incurred, in excess of [Plaintiff's] proportionate share of liability if any . . . ." (*Id.* at PageID 8.)

Plaintiff served Defendant Metro with summons on October 1, 2020. (ECF No. 13.) Plaintiff first moved for the Clerk to enter default against Defendant Metro on November 3, 2020. (ECF No. 19.) The Clerk entered default against Metro on November 4, 2020.[2] (ECF No. 20.) Plaintiff moved for the Clerk to enter an amended entry of default against Defendant Metro on July 13, 2022 (ECF No. 53), and the Clerk entered the amended entry of default the next day (ECF No. 54).

Plaintiff previously moved for entry of default judgment against Defendant Metro (ECF No. 37, "First Motion"), seeking judgment in the full amount of damages pled in the Complaint. At that time, however, Plaintiff's claims against Defendant Intermodal for the same sum of

---

[2] The Clerk's Entry of Default entered November 4, 2020, declared that "the defendant, Metro Air Services, Inc. is hereby declared to be in default to the plaintiff, MSC Mediterranean Shipping Company S.A." (*See* ECF No. 20.) The next sentence, however, referenced Defendant Intermodal, saying "Defendant, Intermodal Cartage Co., LLC, having been served with a summons and complaint on October 1, 2020." Plaintiff previously moved for default judgment against Defendant Metro (*see* ECF No. 37), and at that time, it noted this inconsistency but had not sought to have it corrected. (*See* ECF No. 41 at PageID 219 n.2.)

damages remained outstanding. Because this created a risk of inconsistent judgments, the Court denied Plaintiff's First Motion. (*See* ECF No. 41.)

Since the First Motion, Plaintiff settled with Defendant Intermodal, (*see* ECF No. 55; ECF No. 61 at PageID 325), and all claims against it have been dismissed (*see* ECF Nos. 58 & 59). Plaintiff's Second Motion again seeks to have default judgment entered against Defendant Metro. As the Court previously explained, however, the Second Motion does not clearly state the amount of damages sought or the basis for those damages. (*See* ECF No. 63 at PageID 367–68.) The Court therefore ordered Plaintiffs to file supplemental information. (*See id.*) In response to that order, Plaintiff filed the Supplement, which clarifies that Plaintiff is seeking default judgment against Defendant Metro for a total of $60,295.36, plus post-judgment interest at the applicable rate for judgments pursuant to Tennessee Code Annotated § 47-14-121(a). (*See* ECF No. 64.) The $60,295.36 represents the $75,000 that Plaintiff paid to Danmar to settle the Underlying Litigation, plus $25,295.36 in attorneys' fees that Plaintiffs incurred in the Underlying Litigation, less the $40,000 Plaintiff recovered from Defendant Intermodal pursuant to the settlement between them. (*See id.* at PageID 370.)

## DISCUSSION

First, pursuant to Federal Rule of Civil Procedure 55, when a party against whom a default judgment is sought has failed to appear in an action and is not a minor or incompetent, notice of the motion for default is not required. Fed. R. Civ. P. 55(b)(2). Defendant Metro is not a minor or incompetent. Nonetheless, in the Certificate of Service for the Second Motion, counsel for Plaintiff certified that she had mailed a copy of the Second Motion to Defendant Metro via U.S. First Class Mail. (ECF No. 61 at PageID 330.)

4

Next, the Court "must determine whether it has jurisdiction over the defendant before entering a judgment by default against a party who has not appeared in the case." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 845 (E.D. Mich. 2006). Here, the Complaint alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a foreign corporation organized under the laws of Switzerland with its principal place of business in Switzerland, and Defendants are corporations that are citizens of Tennessee and Texas. (*See* ECF No. 1 at PageID 3–4.) The Court also has personal jurisdiction over the parties. Plaintiff has consented to this Court's jurisdiction by filing the Complaint here; Defendant Metro is alleged to be a Tennessee corporation with its principal place of business in Tennessee, (ECF No. 1 at PageID 3), and the Court therefore has general personal jurisdiction over it. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Under Fed. R. Civ. P. 55(b), a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. To obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *Ramada Franchise Systems, Inc. v. Borada Enters. LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004); *see also Hickman v. Burchett*, No. 07–743, 2008 WL 926609, *1 (S.D. Ohio Apr. 4, 2008) (collecting cases). Once a default has been entered by the clerk, all the plaintiff's well-pleaded allegations are deemed admitted, including jurisdictional allegations. *Ford Motor Co.*, 441 F. Supp. 2d at 846 (citing *Visioneering Constr. v. U.S. Fidelty and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) (providing that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Additionally, once a default is obtained, the proponent may file for default judgment by the clerk or by the court. Fed R. Civ. P. 55(b). When the plaintiff's complaint alleges damages for a sum

certain, "the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A default judgment may be entered without a hearing unless it is necessary to conduct an accounting, determine the amount of monetary damages, establish the truth of any allegation by evidence, or investigate any other matter. *Id; see also Certain Underwriters at Lloyd's, London v. Alkabsh*, 2011 WL 938407, at *8 (W.D. Tenn. Mar. 15, 2011).

Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, but the case law indicates that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. *State Farm Bank v. Sloan*, No. 11–10385, 2011 WL 2144227, at *2 (E.D. Mich. May 31, 2011); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2685 (3rd ed. 1998).

Here, the Clerk has entered default against Defendant Metro. (*See* ECF No. 54.) Therefore, all the Complaint's well-pleaded allegations are deemed admitted for purposes of Defendant Metro's liability. As to damages, a hearing is not necessary. Plaintiff has established its total damages are $100,295.36, which consists of the $75,000 it paid Danmar to settle the Underlying Litigation and $25,295.36 in attorneys' fees it incurred in the Underlying Litigation. (*See* ECF Nos. 1, 62, & 64.) As to Defendant Metro, the amount of damages is offset by Plaintiff's recovery against Defendant Intermodal. Therefore, the total damages as to Defendant Metro is $60,295.36.

Plaintiff also requests post-judgment interest at the applicable rate pursuant to Tenn. Code Ann. § 47-14-121(a). Plaintiff, however, provides no explanation as to why Tennessee's post-judgment interest rate should apply. In diversity cases, Sixth Circuit precedent is clear that federal

law controls post-judgment interest. *See, e.g.*, *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 410 (6th Cir. 2018); *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 260 (6th Cir. 2012) (explaining that state law governs award of pre-judgment interest but federal law governs post-judgment interest). Title 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and sets forth the applicable rate. 28 U.S.C. § 1961(a). Further, the statute's "plain language" indicates that "post judgment interest properly runs from the date of the entry of judgment.'" *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 587 (6th Cir. 2002) (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990)). Therefore, Plaintiff is entitled to post-judgment interest in accordance with 28 U.S.C. § 1961, not Tenn. Code Ann. § 47–14–121(a).

## CONCLUSION

For the reasons set forth above, Plaintiff's Second Motion for Default Judgment Against Defendant Metro Air Services, Inc. (ECF No. 60) is **GRANTED**. Default Judgment shall be entered in favor of Plaintiff MSC Mediterranean Shipping Company, S.A. against Defendant Metro Air Services, Inc. in the amount of $60,295.36, plus post-judgment interest according to 28 U.S.C. 1961.

**IT IS SO ORDERED**, this 27th day of September, 2023.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE